# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

UNITED STATES OF AMERICA,

V.

KRESHNIK ZENELI,

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:06-mj-08

I, Jeffrey E. Cheney, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 3, 2006, in Chippewa County, in the Western District of Michigan, Northern Division, defendant, Kreshnik Zeneli,

did bring a person into the United States at a place other than a designated port of entry, in any manner whatsoever, knowing that such person was an alien, and that such offense was done for the purpose of commercial advantage or private financial gain,

in violation of Title 8 United States Code, Sections 1324(a)(1)(A)(i) and (a)(1)(B)(i).

I further state that I am a Senior Patrol Agent of the U.S. Border Patrol and that this complaint is based on facts set out in the attached affidavit.

Continued on the attached sheet and made a part hereof:   _x_ Yes   ___ No

_____
Signature of Complainant  Jeffrey E. Cheney

Sworn to before me and subscribed in my presence,

_March 7, 2006_____          at          _Grand Rapids, Michigan_____
Date and Time Issued

_Honorable Timothy P. Greeley_                    _____
**Magistrate Judge**                             **Signature of Judicial Officer**
Name & Title of Judicial Officer

## Affidavit in Support of Criminal Complaint

Jeffrey E. Cheney, being duly sworn, deposes and says that:

1. I am currently employed as a Senior Patrol Agent of the Department Of Homeland Security, Bureau Of Customs And Border Protection, United States Border Patrol, assigned to the Sault Sainte Marie, Michigan Station. I have been a Border Patrol Agent for twelve years and six months. It is my duty to enforce the laws of the Immigration and Nationality Act (INA) as set forth by Congress, as well as other federal laws.

2. On March 3, 2006, members of the International Border Enforcement Team (IBET) received intelligence information that smugglers were going to attempt to cross illegal aliens into the United States. Canadian authorities began conducting surveillance on Kreshnik ZENELI (DOB: 09/23/1981). ZENELI is a known smuggler. He is a naturalized Canadian citizen having been born in Albania. ZENELI had traveled from Sault Sainte Marie, ON to Toronto ON, where he had rented a red Pontiac sedan. Officers of the Royal Canadian Mounted Police (RCMP) observed ZENELI purchase a small electric boat motor, a battery, and life jackets from Canadian Tire. ZENELI asked that the battery be charged, as he needed to use it immediately.

3. Over the past few days, ZENELI was seen with a woman later identified as Rengina VASILOPOULOU, DOB: 09/05/1983, at the Travelers Motel, Room 14, 859 Trunk Rd., Sault Sainte Marie, ON. During this time, RCMP Officers saw ZENELI traveling with VASILOPOULOU from Sault Sainte Marie, Ontario to the Garden River in a red Pontiac sedan. There, he would reconnoiter the area.

4. Border Patrol Agents Christopher Franklin and John Lipani set up observation positions near the area where ZENELI was observed at the Garden River. This allowed agents an unobstructed view of anyone crossing from Canada into the United States. Agent Shawn Wilson stationed himself on the Sugar Island Ferry to observe anyone coming on or off of the island.

5. On March 5, 2006, Canadian authorities alerted Border Patrol Agents that ZENELI and two other individuals had left Travelers Motel and were heading toward the Garden River. Three individuals were seen crossing the United States / Canada Border on the Saint Mary's River from Garden River, Ontario, Canada to Sugar Island, Michigan.

6. Agents Franklin and Lipani saw two of the individuals, ZENELI and VASILOPOULOU, as they disembarked from the small inflatable boat that brought them to the U.S. shoreline. ZENELI and VASILOPOULOU took off their life vests and proceeded to walk west on East North Shore Drive.

United States v. Zeneli
Affidavit in support of criminal complaint        Page 1 of 5

7. Agents Franklin and Lipani waited for a period of time, expecting a vehicle to pick the alien up. After approximately 2 hours it became apparent that no vehicle was going to arrive and the Agents began to follow ZENELI and VASILOPOULOU's footprints. The agents followed the footprints from the water's edge through the woods and to the road. They also recovered a lifejacket left near a house near the crossing point. From there, the agents followed the prints west to Brassar Rd where they turned south. The footprints continued down Brassar toward 1 1/2 Mile Rd. Around this time, we received a citizens report of two individuals holding hands walking down 1 1/2 Mile Rd. past West Shore Dr.

8. As I proceeded down 1 1/2 Mile Rd, I saw two individuals, ZENELI and VASILOPOULOU, holding hands walking on the side of the road. It is highly unusual that anyone would be walking down 1 1/2 Mile Rd. at 11:15 p.m. on a cold night. Sugar Island is a extremely remote, sparsely populated area. There is no pedestrian walkway. The only way on or off of the island is by ferryboat.

9. I stopped and questioned the pair as to their immigration status.

    • ZENELI claimed to be a Canadian Citizen born in Albania. He stated that he was naturalized as a Canadian about 3 years ago.

    • He stated that he was walking home from the Hilltop Bar after having a few drinks.

    • ZENELI stated that he had taken a taxi from Sault Sainte Marie, Michigan to Sugar Island to drink at the Hilltop Bar.

    • He denied crossing the border illegally.

    • He insisted that he had only been on the Island for about an hour and had been in the Hilltop Bar.

    • ZENELI's pants were frozen from the knees down as if he had been walking in deep snow, and then walking with the wet pants exposed to the freezing air.

    • When questioned about VASILOPOULOU, ZENELI stated that he did not know her. He said that he had just picked her up at the bar and was taking her home.

United States v. Zeneli
Affidavit in support of criminal complaint          Page 2 of 5

- I compared the soles on the bottom of ZENELI's shoes to the footprints that we had been tracking from the border. They were the same type and pattern.

10. VASILOPOULOU was questioned as to her citizenship. She presented a valid Greek Passport with no United States visa. It did contain an admission stamp from Canada Immigration in Toronto dated February 17, 2006. She admitted to being an alien from Greece who had just entered the United States illegally in the company of ZENELI.

11. I went to the Hilltop Bar and spoke with the bartender and some of the patrons. They recalled seeing a male and female standing in the parking lot a few minutes prior, but stated that they never came into the bar and that they just continued walking down the road.

12. ZENELI was advised of his <u>Miranda</u> Rights per service issued card I-214 in the English language at 11:50 p.m. by SPA Jeffrey Cheney. SPA Sandra Lobring witnessed this. ZENELI stated that he understood his rights and was not willing to answer our questions without an attorney present. All questioning of ZENELI ceased at this time.

13. On March 6, 2006, VASILOPOULOU provided a statement under oath regarding her smuggling incident. The statement began on March 6, 2006 at 1:48 p.m.. I administered the oath and conducted the interview with SPA John Lipani present. VASILOPOULOU made the following statements:

- She stated that she previously had a B-2 visitors visa. She stated that she had entered the United States one time with it and had stayed for 11 months. In November of 2005, she attempted to re-enter the United States at Chicago O'Hare International Airport. She was denied entry and her visa was cancelled when it was learned that she had been working illegally in the United States.

- In February of 2006, VASILOPOULOU was instructed by her husband to fly to Toronto, ON. He had hired a smuggler named Nick and she was to meet him at the Cafe Illiada.

- She went to the cafe and asked for Nick. Restaurant employees took her to him.

- VASILOPOULOU was shown a photograph of ZENELI and she identified it as the man that she knows as Nick.

<u>United States v. Zeneli</u>
Affidavit in support of criminal complaint          Page 3 of 5

- She stated that Nick explained to her how she was going to cross into the United States at a place called Sugar Island. ZENELI then put her on a bus to Sault Sainte Marie, ON.

- On March 4, 2006, VASILOPOULOU arrived in Sault Sainte Marie, ON. ZENELI picked her up in a red sedan and transported her to the Travelers Motel, Room 14.

- ZENELI had paid for the motel before she arrived.

- ZENELI kept her in the motel except for trips to buy food. She stated that ZENELI took her to the Garden River twice and showed her where she would be crossing.

- On March 5, 2006, ZENELI and an unknown man took VASILOPOULOU to the Garden River, arriving there at around 8:00 p.m. She said that she was driven there in a red sedan.

- ZENELI already had the boat and the life jackets.

- She identified the life jacket found by Border Patrol Agents at the crossing point as the one given to her by ZENELI for her crossing.

- ZENELI placed VASILOPOULOU in the boat and got in with her. The unidentified man drove the boat to Sugar Island.

- Once they landed, ZENELI got out of the boat and walked into the woods to see if it was clear. A few moments later he returned and summoned her.

- She exited the boat and went with ZENELI to a nearby house.

- She took off her life jacket and left it in the woods by the house.

- She and ZENELI then began walking south towards the road. They then walked along for about three hours stopping once for a short period of time in the parking lot of a bar, but did not enter the bar.

- VASILOPOULOU's husband paid ZENELI $3,000.00 to $4,000.00 to smuggle her into the United States.

- ZENELI knew that she did not have any documents to allow her to enter the United States.

United States v. Zeneli
Affidavit in support of criminal complaint          Page 4 of 5

- ZENELI was going to transport her to Detroit. From there someone was going to transport her to Chicago.

14. VASILOPOULOU was wearing a black jacket at the time of her arrest. She stated that the jacket belonged to ZENELI and that he had given it to her after they crossed because she was cold. Inside the pocket was a receipt from the Travelers Motel, room 14, dated March 4, 2006. It was paid with a MasterCard. The last four numbers on the MasterCard were 1478. A search of ZENELI revealed a Canadian Tire Options MasterCard in his possession with the numbers ending in 1478.

15. ZENELI was seen by RCMP Officers purchasing a boat motor, battery for the motor, and life jackets at Canadian Tire.

16. RCMP Officers saw ZENELI with VASILOPOULOU prior to their crossing.

17. Agent Shawn Wilson was on the Sugar Island Ferry. Not one taxi came on or off of the island. ZENELI or VASILOPOULOU were not passengers in any car going on or off of Sugar Island.

18. Based on the preceding, your Affiant believes that there is probable cause to believe that Kreshnik ZENELI, knowing that a person is an alien, did bring such person to the United States, in any manner whatsoever, at a place other than a designated port of entry, and that such offense was done for the purpose of commercial advantage or private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i) and (a)(1)(B)(i).

Jeffrey E. Cheney
Bureau of Customs and Border Protection

Sworn and subscribed before me on this 7th day of March 2006.

The Honorable Timothy P. Greeley
United States Magistrate Judge

United States v. Zeneli
Affidavit in support of criminal complaint          Page 5 of 5